UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  
------------------------------------------------------------------------X  
THOMAS J. TRIOLA,  

                     Plaintiff,

                - against -

ASRC MANAGEMENT SERVICES (ASRC MS),  
a wholly owned subsidiary of Arctic Slope Regional  
Corporation, and TIMOTHY GEITHNER, Secretary,  
U.S. Department of the Treasury,  

                     Defendants.  
------------------------------------------------------------------------X  

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

No. 10-CV-560 (ERK) (ALC)

KORMAN, J.:

Plaintiff Thomas J. Triola, a former United States customs agent, applied for a job with the United States Attorney's Office for the Eastern District of New York as a Financial Investigator in 2006. After he was turned down, he brought suit against ASRC Management Services ("ASRC")—which provided human-resources-related services to the United States—and Timothy Geithner, the Treasury Secretary, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and New York State Executive Law §§ 296 and 297, alleging that ASRC and Geithner had discriminated against him based on his prior protected activities. ASRC moves to dismiss the complaint on the grounds that it fails to state an actionable claim and that it is time barred.

Triola retired from his former position as a Special Agent with the United States Customs Service in 2001. (Compl. ¶ 22.) Previously, in 1998, Triola filed several complaints of age discrimination and retaliation with the Customs Service related to his exclusion from certain promotion lists. (*Id.* ¶ 23.) Those complaints were not resolved to Triola's satisfaction by the Customs Service, so he filed suit in this Court in March 2001. (*Id.*) The case eventually

1

proceeded to trial before Judge Irizarry, where Triola lost, but the result was reversed on appeal. Currently, the case is still pending. (*See Triola v. Snow*, 01-cv-1603 (E.D.N.Y. 2001).)

In early March 2006, Triola received a notice announcing an open position entitled "Financial Investigator (Intelligence Analyst II)" advertised by ASRC pursuant to a contract between ASRC and the Internal Revenue Service ("IRS"). (Compl. ¶ 24.) The position was located in the Financial Crimes/Forfeiture Unit of the U.S. Attorney's Office for the Eastern District of New York. (*Id.*) Triola applied for the position several days later, and a project manager at ASRC contacted him to set up an interview on March 20, 2006. (*Id.* ¶¶ 25-26.) During the interview, according to Triola, the project manager, LeQuan Bowens, informed him that she was "very impressed with him, his resume, and his experience." (*Id.* ¶ 27.) Subsequently, on April 3, 2006, Triola was interviewed at the U.S. Attorney's Office by Assistant United States Attorney ("AUSA") Elaine Banar, the Chief of the Financial Crimes/Forfeiture Unit. (*Id.* ¶ 29.) According to Triola, "[t]he interview was very detailed and covered much professional ground, [Triola's] experience and accomplishments, and other information contained in his cover letter and resume." (*Id.*)

Triola attended a second interview with AUSA Banar on April 10, 2006. (*Id.* ¶ 30.) Subsequently, Triola received an offer for employment on April 13, 2006, which was contingent on Triola's completion of a "pre-employment drug screen, a pre-employment background investigation, and a favorable customer conducted background investigation, as required by [ASRC's contract with the] IRS." (*Id*. ¶¶ 32, 34.) Two days later, Triola accepted the contingent offer of employment in writing, and provided a number of documents to ASRC. (*Id.* ¶ 35.) On July 6, 2006, however, Triola received a telephone call from ASRC indicating that "there appeared to be a conflict of interest in his being employed in this position and that ASRC might

have to rescind the offer of employment." (*Id.* ¶ 41.) According to Triola, ASRC "<u>alluded to some pending litigation</u>." (*Id.* (emphasis in original).) Triola explained that he had previously filed complaints against the Customs Service, and that an AUSA in the Central Islip office of the United States Attorney's Office for the Eastern District of New York was handling the case for the Department of the Treasury. (*Id.*) Later, on July 9, 2006, ASCR called Triola and informed him that they were rescinding his offer of employment and accused him of "not informing [them] of the 'conflict of interest' during his interview." (*Id.* ¶ 44.) After some back and forth between Triola and ASRC, on September 5, 2006, ASRC sent Triola an email indicating that they had "decided to go with another candidate" to fill the position. (*Id.* ¶ 47.)

Two years later, in March 2008, Triola prepared a SF-86 government form, which he was required to file every five years in order to keep his Top Secret Clearance status. (*Id.* ¶ 54.) Triola alleges that in order to accurately complete the form, he needed to determine the reason why he had been denied employment by ASRC. (*Id.* ¶ 55.) Accordingly, he filed a FOIA request with the IRS "regarding his selection and subsequent rescission of his employment offer." (*Id.*) The IRS indicated that it "could not help him without the contract number and referred him to ASRC." (*Id.*) After Triola contacted ASRC, it responded that "[y]ou were informed at the time that your employment offer was rescinded in July 2006 that the job for which you had applied was one for which you were barred by a conflict of interest." (*Id.* ¶ 57.) ASRC also indicated that the conflict was not disclosed by Triola and that it was "discovered when ASRC's Federal agency customer received the paperwork for the mandatory background investigation to which you consented in writing." (*Id.*) Triola alleges that this was the first occasion that he was informed that he was "barred" and that the conflict was discovered by the IRS as part of Triola's background check. (*Id.* ¶ 58.)

Over the next several months, Triola sent several letters to the IRS requesting information regarding his background check in 2006. (*Id.* ¶ 61.) In October 2008, Triola received some documents, which he alleges gave him "grounds to reasonably suspect that the reason for rescinding the employment offer was pretextual." (*Id.* ¶ 62-63.) Triola alleges that there is no mention "of anything remotely corroborating any of the comments [ASRC] made" with respect to his alleged conflict of interest. (*Id.* ¶ 63.) Consequently, he alleges, "ASRC's explanations to him were false, and obviously were a pretext to cover the real reason for not hiring him, which was the fact that he had engaged in protected activity." (*Id.* ¶ 67.)

In March 2009, Triola applied for another position with ASRC. (*Id.* ¶ 68.) In August 2009, Triola "received a very *pro forma* response indicating that the position was filled." (*Id.* ¶ 69.) On August 13, 2009, Triola filed a written Charge of Discrimination/Retaliation against ASRC with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 12.) The charge alleged that ASRC retaliated against Triola "as a direct result of [his] protected activity." (Wolin Decl. Exs. 1, 2.) The EEOC issued a right to sue letter to Triola on November 13, 2009. (Compl. ¶ 14.)

**STANDARD OF REVIEW**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In conducting this analysis, the Supreme Court has suggested a two-pronged approach:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

> should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The *Iqbal* Court continued: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Factual allegations do not "plausibly give rise to an entitlement of relief" where those factual allegations, taken as true, are "'merely consistent with' a defendant's liability," *id.* at 1949-50, but are also "not only compatible with, but indeed . . . more likely explained by, lawful . . . behavior," *id.* at 1950. Thus, where there is an "obvious alternative explanation" that is more likely, the plaintiff's cause of action is not plausible and must be dismissed. *Id.* at 1951.

## DISCUSSION

### I. Title VII Claims

Triola's sole federal claim for relief is a retaliation claim under Title VII based on his previous age discrimination complaints. Title VII prohibits discrimination in employment based on an individual's "race, color, religion, sex or national origin." 42 U.S.C. §§ 2000e-2, 2000e-16. Moreover, under Title VII, an employer may not "discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title." 42 U.S.C. § 2000e-3(a). The plain language of Title VII indicates that it does not prohibit discrimination on the basis of age. Consequently, retaliation on the basis of prior charges of age discrimination also may not form the basis of a claim under Title VII. *See Lennon v. Rubin*, 166 F.3d 6, 8 (1st

5

Cir. 1999) (plain language of Title VII indicates that retaliation claims based on age discrimination are not permitted under Title VII); *Grey v. City of Norwalk Bd. of Educ.*, 304 F. Supp. 2d 314, 322 (D. Conn. 2004) ("[A]ge discrimination is not within the scope of Title VII."); *Murphy v. Bd. of Educ.*, 273 F. Supp. 2d 292, 314 n.20 (W.D.N.Y. 2003); *Lyon v. Jones*, 260 F. Supp. 2d 507, 509 n.1 (D. Conn. 2003); *see also Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 586-87 (2004) (discussing legislative history of the Age Discrimination in Employment Act ("ADEA") and noting that "Congress chose not to include age within discrimination forbidden by Title VII of the Civil Rights Act of 1964 . . . being aware that there were legitimate reasons as well as invidious ones for making employment decisions on age")

Triola's only response is that "plaintiff, in his prior complaints, also raised retaliation as a basis. ASRC, in asserting that Title VII does not prohibit retaliation resulting from an age claim, ignores that fact." (Pl.'s Mem. 4.) Whether Triola previously raised an age-discrimination retaliation claim has no bearing on whether that claim is cognizable under Title VII in this action, which it plainly is not. Moreover, Triola's retaliation claims in *Triola v. Snow* were brought under ADEA, not Title VII. *See Triola v. Snow*, 289 Fed. Appx. 414, 415 (2d Cir. 2008) (analyzing claims under ADEA). Here, by contrast, Triola has not brought any claims under ADEA.

## II. Timeliness of Claims

Even assuming that Triola's claims were cognizable under Title VII, or that they had properly been brought under ADEA, they would nonetheless be subject to dismissal because they are time barred. Plaintiffs bringing claims under Title VII or ADEA must first file a charge with the EEOC within three hundred days after the alleged unlawful employment practice occurred.[1]

---

[1] 42 U.S.C. § 2000e-5(e)(1) reads:

29 U.S.C. § 626(d)(2); 42 U.S.C. § 2000e-5(e)(1); *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998) (ADEA); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (Title VII). Claims based on conduct that occurred prior to three hundred days of a plaintiff's EEOC filing are time barred. Here, Triola filed his charge with the EEOC on August 13, 2009, which was more than three years after he was denied the position by ASRC in July 2006. Because the charge was filed more than 300 days after the alleged retaliation occurred, Triola's claim relating to the July 2006 rescission of his employment offer is time barred.[2]

Triola argues that the 300-day time period in which he had to file a charge with the EEOC did not run until October 20, 2008, when he received documents from the IRS in response to his FOIA requests that "for the first time, gave Plaintiff grounds to reasonably suspect that the reason for rescinding the employment offer was pretextual." (Pl.'s Mem. 13.) In support, Triola cites *Gaston v. New York City Department of Health*, 432 F. Supp. 2d 321 (S.D.N.Y. 2006), which holds that "[t]he statute of limitations for an unlawful employment practice begins to run

---

> A charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

Because New York has an agency, the New York State Division of Human Rights ("NYSDHR"), with authority to grant relief from unlawful employment practices—including discrimination on the basis of disability—individuals who first file a complaint with the NYSDHR may avail themselves of the extended three-hundred-day filing period. The Second Circuit has held that because the EEOC and the NYSDHR have a worksharing agreement, which provides that the two agencies are agents of one another, a claimant filing with the EEOC also automatically institutes a filing with the state agency, and the three-hundred-day period applies even where the claimant files only with the EEOC. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 326-28 (2d Cir. 1999); *Torrico v. Int'l Bus. Mach. Corp.*, 319 F. Supp. 2d 390, 400-04 (S.D.N.Y. 2004).

[2] Although it is somewhat unclear from the face of the complaint, to the extent that Triola alleges that ASRC's failure to hire him in March 2009 also reflected improper retaliation, that claim would not be untimely. Nevertheless, beyond conclusory allegations in the complaint, which may be disregarded on a motion to dismiss, s*ee Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (bald allegation of impermissible government motive is conclusory and may be disregarded under *Iqbal*), Triola has not pled any plausible theory of retaliation relating to his 2009 employment application. Consequently, that claim is dismissed as well.

when the employee 'knew or had reason to know of the injury serving as the basis for the claim.'" *Id.* at 327.

Triola's argument, however, is contradicted by his own allegations. Indeed, as Triola pled in the complaint, during Triola's second interview on April 10, 2006, AUSA Banar questioned Triola regarding "the need for the selectee to be able to work with Special Agents from the U.S. Department of Homeland Security, Immigrations and Customs Enforcement," and "[i]t was readily apparent to [Triola], from the line of questioning, that the inquiry was related to his outstanding EEO complaints." (Compl. ¶ 30.) Moreover, on July 6, 2006, Triola received a telephone call from ASRC advising him that there appeared to be a "conflict of interest," and ASRC "alluded to some pending litigation." (*Id*. ¶ 41 (emphasis in original).) During that conversation, Triola stated that "his pending suit should not be held against him," and that he "should not be denied employment" on those grounds. (*Id.*) Several days later, on July 14, 2006, Triola received a letter clearly stating that the reason that his offer was being rescinded was due to a "conflict of interest which could not be reasonably mitigated at this time." (*Id.* ¶ 45.) Finally, in an email dated August 31, 2006 from Triola to ASCR, Triola stated, "[w]e discussed that the conflict identified was obviously the pending civil litigation relating to my civil rights suit for age discrimination and retaliation arising out of the filing of my EEO complaint in 1998 with my former employer, U.S. Customs Service." (Wolin Decl. Exh. 1, Attach. 4.)

Triola was clearly aware that his offer was rescinded due to his pending employment-discrimination suit by at least July 6, 2008, when he received a phone call from ASCR, if not earlier. Consequently, the 300-day period during which Triola was required to file charges with

8

the EEOC began to run at that point, and Triola's claims relating to the 2006 rescission of his employment offer are dismissed as untimely.

## CONCLUSION

ASRC's motion to dismiss is granted. Because I decline to exercise jurisdiction over the pendent state law claims, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), they are also dismissed.

SO ORDERED.

Brooklyn, New York
August 12, 2010

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge