UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THOMAS J. TRIOLA,

                Plaintiff,

                - against -

ASRC MANAGEMENT SERVICES (ASRC MS),
a wholly owned subsidiary of Arctic Slope Regional
Corporation, and TIMOTHY GEITHNER, Secretary,
U.S. Department of the Treasury,

                Defendants.
-------------------------------------------------------------------X

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

No. 10-CV-560 (ERK) (LB)

KORMAN, J.:

On February 8, 2010, Thomas J. Triola ("Triola") filed a complaint against ASRC Management Services ("ASRC"), an employment placement agency that provides management support and staff outsourcing services to the United States government, and Timothy Geithner ("Geithner"), the Secretary of the United States Department of the Treasury. (Compl. ¶¶ 1, 7, 10.) In count one of his complaint, Triola claims that ASRC and Geithner retaliated against him based on his prior age discrimination complaint, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII") by (i) rescinding an offer of employment in July 2006 and (ii) denying his application for employment on August 10, 2009. (*Id.* ¶¶ 44-45, 68-69, 70-71; *see also* Pl.'s Opp. 1.) In count two, Triola alleges that ASRC's conduct on these two occasions also constituted retaliation in violation of New York State Executive Law §§ 296 and 297. (Compl. ¶¶ 78-79.)

On April 19, 2010, ASRC moved to dismiss the complaint for lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, under Fed. R. Civ. P.

1

12(b)(6). (DE 8.)[1] On August 12, 2010, ASRC's motion to dismiss was granted. I dismissed Triola's Title VII claim on the ground that a retaliation claim based on a previous age discrimination complaint is not cognizable under Title VII. (8/12/2010 Order at 5-6.) I also held that Triola's Title VII claim regarding the July 2006 rescission of his employment offer was time barred. (*Id.* at 6-9.) I declined to exercise pendent jurisdiction over Triola's state law claims. (*Id.* at 9.)

On September 8, 2010, Triola filed a notice of appeal (DE 25), but the parties subsequently filed a stipulation withdrawing the appeal, pursuant to Fed. R. App. P. 42(b) (DE 26). The appeal was withdrawn because the order dismissing the case against ASRC was not a final order. (*See Triola v. ASRC Mgmt. Servs.*, 10-3605 (2d Cir.), Doc. 38.) It related only to one of the two co-defendants, while the cause of action against defendant Geithner remained open. (*Id.*)

Defendant Geithner now moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(c). In his motion, Geithner argues that Triola's Title VII claim should be dismissed because "Title VII does not prohibit discrimination on the basis of age, nor does Title VII prohibit retaliation based on prior charges of age discrimination." (Def.'s Mem. of Law at 1.) Geithner also asserts that, even if Triola's claim were cognizable under Title VII, his claim based on 2006 events is time barred, and his claim based on 2009 events should be dismissed for failure to allege an employer-employee relationship between the Department of the Treasury and Triola. (*Id.* at 1-2.) Lastly, Geithner asks me to apply the "law of the case" doctrine, based on the August 12, 2010 order granting ASRC's motion to dismiss. (*Id.* at 2.)

---

[1] "DE" refers to the docket entry in this case.

# FACTS

The August 12, 2010 dismissal order recounted the most salient facts from Triola's complaint, and they are thus repeated here:

> Triola retired from his former position as a Special Agent with the United States Customs Service in 2001. (Compl. ¶ 22.) Previously, in 1998, Triola filed several complaints of age discrimination and retaliation with the Customs Service related to his exclusion from certain promotion lists. (*Id.* ¶ 23.) Those complaints were not resolved to Triola's satisfaction by the Customs Service, so he filed suit in this Court in March 2001. (*Id.*) The case eventually proceeded to trial before Judge Irizarry, where Triola lost, but the result was reversed on appeal. Currently, the case is still pending.[2] (*See Triola v. Snow*, 01-cv-1603 (E.D.N.Y. 2001).)
>
> In early March 2006, Triola received a notice announcing an open position entitled "Financial Investigator (Intelligence Analyst II)" advertised by ASRC pursuant to a contract between ASRC and the Internal Revenue Service ("IRS"). (Compl. ¶ 24.) The position was located in the Financial Crimes/Forfeiture Unit of the U.S. Attorney's Office for the Eastern District of New York. (*Id.*) Triola applied for the position several days later, and a project manager at ASRC contacted him to set up an interview on March 20, 2006. (*Id.* ¶¶ 25-26.) During the interview, according to Triola, the project manager, LeQuan Bowens, informed him that she was "very impressed with him, his resume, and his experience." (*Id.* ¶ 27.) Subsequently, on April 3, 2006, Triola was interviewed at the U.S. Attorney's Office by Assistant United States Attorney ("AUSA") Elaine Banar, the Chief of the Financial Crimes/Forfeiture Unit. (*Id.* ¶ 29.) According to Triola, "[t]he interview was very detailed and covered much professional ground, [Triola's] experience and accomplishments, and other information contained in his cover letter and resume." (*Id.*)
>
> Triola attended a second interview with AUSA Banar on April 10, 2006. (*Id.* ¶ 30.) Subsequently, Triola received an offer for employment on April 13, 2006, which was contingent on Triola's completion of a "pre-employment drug screen, a pre-employment background investigation, and a favorable customer conducted background investigation, as required by [ASRC's contract with the] IRS." (*Id.* ¶¶ 32, 34.) Two days later, Triola accepted the contingent offer of employment in writing, and provided a number of documents to ASRC. (*Id.* ¶ 35.) On July 6, 2006, however, Triola received a telephone call from ASRC indicating that "there appeared to be a conflict of interest in his being employed in this position and that ASRC might have to rescind the offer of employment." (*Id.* ¶ 41.) According to Triola, ASRC "<u>alluded to some pending litigation</u>." (*Id.* (emphasis in original).) Triola explained that he had previously filed complaints

---

[2] According to Triola, "[t]his is the protected activity that Plaintiff has engaged in and which serves as the predicate for this complaint." (Compl. ¶ 23.)

against the Customs Service, and that an AUSA in the Central Islip office of the United States Attorney's Office for the Eastern District of New York was handling the case for the Department of the Treasury. (*Id.*) Later, on July 9, 2006, AS[RC] called Triola and informed him that they were rescinding his offer of employment and accused him of "not informing [them] of the 'conflict of interest' during his interview." (*Id.* ¶ 44.) After some back and forth between Triola and ASRC, on September 5, 2006, ASRC sent Triola an email indicating that they had "decided to go with another candidate" to fill the position. (*Id.* ¶ 47.)

Two years later, in March 2008, Triola prepared a SF-86 government form, which he was required to file every five years in order to keep his Top Secret Clearance status. (*Id.* ¶ 54.) Triola alleges that in order to accurately complete the form, he needed to determine the reason why he had been denied employment by ASRC. (*Id.* ¶ 55.) Accordingly, he filed a FOIA request with the IRS "regarding his selection and subsequent rescission of his employment offer." (*Id.*) The IRS indicated that it "could not help him without the contract number and referred him to ASRC." (*Id.*) After Triola contacted ASRC, it responded that "[y]ou were informed at the time that your employment offer was rescinded in July 2006 that the job for which you had applied was one for which you were barred by a conflict of interest." (*Id.* ¶ 57.) ASRC also indicated that the conflict was not disclosed by Triola and that it was "discovered when ASRC's Federal agency customer received the paperwork for the mandatory background investigation to which you consented in writing." (*Id.*) Triola alleges that this was the first occasion that he was informed that he was "barred" and that the conflict was discovered by the IRS as part of Triola's background check. (*Id.* ¶ 58.)

Over the next several months, Triola sent several letters to the IRS requesting information regarding his background check in 2006. (*Id.* ¶ 61.) In October 2008, Triola received some documents, which he alleges gave him "grounds to reasonably suspect that the reason for rescinding the employment offer was pretextual." (*Id.* ¶ 62-63.) Triola alleges that there is no mention "of anything remotely corroborating any of the comments [ASRC] made" with respect to his alleged conflict of interest. (*Id.* ¶ 63.) Consequently, he alleges, "ASRC's explanations to him were false, and obviously were a pretext to cover the real reason for not hiring him, which was the fact that he had engaged in protected activity." (*Id.* ¶ 67.)

In March 2009, Triola applied for another position with ASRC. (*Id.* ¶ 68.) In August 2009, Triola "received a very *pro forma* response indicating that the position was filled." (*Id.* ¶ 69.)

(8/12/2010 Order at 1-4 (first and fourth alterations added).)

On September 18, 2009, after having made initial contact with the Equal Employment Opportunity Commission ("EEOC"), Triola received a Notice of Right to File a Discrimination Complaint, which was issued by the Department of the Treasury. (Compl. ¶ 16.) On or about September 30, 2009, Triola filed a formal complaint of discrimination and retaliation with the Department of the Treasury. (*Id.* ¶ 17.) In his complaint, Triola alleged that the Internal Revenue Service ("IRS"), an agency of the Treasury Department, discriminated and retaliated against him based on his prior protected activities "when it caused and/or influenced ASRC not to hire [him] on at least two (2) occasions"—that is, in July 2006 and August 2009. (*Id.* ¶ 18.) On November 12, 2009, the Department of the Treasury issued a Final Agency Decision dismissing Triola's complaint and advising him of his right to file an action against Geithner in district court. (*Id.* ¶¶ 19-20.) Triola subsequently filed the present action.

## DISCUSSION

**A. Motion to Dismiss Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Iqbal*, the Supreme Court advanced a two-pronged approach to considering a motion to dismiss. First, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. The Court explained that, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The standard applicable to Rule 12(b)(6) motions also applies to Rule 12(c) motions for judgment on the pleadings. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

## B. Analysis

### 1. Title VII

Triola's only federal claim is a retaliation claim under Title VII based on his previous age discrimination complaint. According to Triola, such retaliation took place on two occasions: first, in July 2006, when his offer of employment was rescinded, and second, on August 10, 2009, when his application for employment was denied. (Compl. ¶¶ 44-45, 68-69, 70-71; *see also* Pl.'s Opp. 1.)

Title VII prohibits employers, including the federal government, from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a), 2000e-16. Title VII also bars employers from retaliating against an employee or job applicant "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* § 2000e-3(a).

As stated in my previous order, the plain language of Title VII does not prohibit discrimination on the basis of age, nor does it prohibit retaliation based on a previous age

discrimination complaint. (8/12/2010 Order at 5-6 (citing *Lennon v. Rubin*, 166 F.3d 6, 8 (1st Cir. 1999); *Grey v. City of Norwalk Bd. of Educ.*, 304 F. Supp. 2d 314, 322 (D. Conn. 2004); *Murphy v. Bd. of Educ.*, 273 F. Supp. 2d 292, 314 n.20 (W.D.N.Y. 2003); *Lyons v. Jones*, 260 F. Supp. 2d 507, 509 n.1 (D. Conn. 2003); *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 586-87 (2004).) Consequently, Triola's claim that the Treasury Department retaliated against him in July 2006 and August 2009, based on his previous age discrimination complaint, is not cognizable under Title VII.

**2. Timeliness**

Even if Triola's retaliation claim were cognizable under Title VII, his claim regarding the July 2006 job offer rescission would nevertheless be subject to dismissal because Triola failed to exhaust his administrative remedies in a timely fashion. Before a federal employee or applicant for federal employment may bring a Title VII action in district court, he must first exhaust his administrative remedies, as defined by statute and regulations promulgated thereunder. *See* 42 U.S.C. § 2000e-16(c); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (per curiam). The government can assert the failure to do so as an affirmative defense. *Belgrave*, 254 F.3d at 386. In *Belgrave*, the Second Circuit clearly laid out the administrative remedies that must be exhausted:

> The EEOC regulations require that the aggrieved employee, *inter alia*, (1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, *see* 29 C.F.R. § 1614.105(a)(1), and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice"), *see id.* § 1614.106(a), (b). The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408(a), (b).

*Id.* Thus, the first step Triola was required to take was to consult with an EEO counselor at the Department of the Treasury within 45 days of the effective date of the job offer rescission, *see* 29 C.F.R. § 1614.105(a)(1),[3] which was July 7, 2006 (Compl. ¶ 45). Triola, however, does not claim that he contacted the EEOC within 45 days of July 7, 2006. Rather, he suggests that he did not contact the EEOC until September 2009, which undeniably exceeds the 45-day time limit. (*See id.* ¶ 16.)

In an effort to defend the timeliness of his claim, Triola argues that his retaliation claim based on 2006 events did not accrue until October 20, 2008, when he received documentation from the U.S. Office of Personnel Management and/or the IRS, "which, [Triola claims,] for the first time, gave Plaintiff grounds to reasonably suspect that the reason for rescinding the employment offer was pretextual." (Pl.'s Opp. 6 (quoting Compl. ¶ 62).) Just as in his opposition to ASRC's motion to dismiss, Triola supports this contention by citing to *Gaston v. New York City Department of Health*, 432 F. Supp. 2d 321 (S.D.N.Y. 2006), which holds that "[t]he statute of limitations for an unlawful employment practice begins to run when the employee knew or had reason to know of the injury serving as the basis for his claim." *Id.* at 327 (internal quotation marks omitted). Indeed, the EEOC regulations provide for an extension of the 45-day time limit when an individual shows "that he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2). But, as I held in my August 12, 2010 order, "Triola was clearly aware that his offer was rescinded due to his pending employment-discrimination suit by at least July 6, 200[6], when he received a phone call from AS[RC], if not earlier." (8/12/2010 Order at 8.) The 45-day time period thus began to run on or around that date. Because Triola did not contact the

---
[3] Section 1614.105(a)(1) provides that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

EEOC until 2009, his claim regarding the July 2006 job offer rescission is subject to dismissal for failure to timely exhaust his administrative remedies.

In apparent recognition that his age discrimination-based retaliation claim is not cognizable under Title VII, Triola asks that his claim be treated as if it had been brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") (Pl.'s Opp. 4)—a statute that does prohibit age discrimination and retaliation based on a prior age discrimination complaint, 29 U.S.C. §§ 623(a), 633a(a); *Gomez-Perez v. Potter*, 553 U.S. 474, 477 (2008). Nevertheless, even if I were to treat Triola's 2006 events-based claim as one brought under the ADEA—or even if I were to grant Triola leave to replead—this claim would be time barred because EEOC regulations also require individuals bringing an ADEA claim to first contact an EEO counselor within 45 days of the allegedly discriminatory action. *See* 29 C.F.R. § 1614.105(a); *Tulin v. U.S. Postal Serv.*, No. 06-CV-5067, 2008 WL 822126, at *5 (E.D.N.Y. Mar. 25, 2008). Because Triola did not contact an EEO counselor within the 45-day time frame, any ADEA claim based on the 2006 job offer rescission would also be subject to dismissal.

### 3. Employer-Employee Relationship

In addition, even assuming that Triola's retaliation claim based on the August 10, 2009 denial of his employment application were cognizable under Title VII, it would nevertheless be subject to dismissal because Triola failed to allege that there was a potential employer-employee relationship between him and the Department of the Treasury with respect to the job for which he applied in 2009.

It is well established that "the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d

Cir. 2006). Here, however, Triola simply pled the following with respect to the denial of his job application in 2009:

> The retaliatory intent by ASRC and the IRS became clearer in or about March 2009, when Plaintiff applied to ASRC for a posted similar position of Financial Investigator (Intelligence Analyst II) in New York City. Plaintiff subsequently forwarded follow-up status requests to ASRC. Plaintiff's most recent inquiry was dated August 5, 2009. Plaintiff specifically forwarded this inquiry to Susan Morales, Director of Employment, ASRC, who was involved in the rescission of the offer of employment in 2006.
>
> After ignoring all of Plaintiff's previous inquiries, ASRC, by Ms. Morales, finally responded by e-mail on August 10, 2009. Plaintiff received a very *pro forma* response indicating that the position was filled. Plaintiff went, with reference to the same position, from being Best Qualified and the Selectee to not even being considered.

(Compl. ¶¶ 68-69.)

Apart from suggesting that the position he applied for in March 2009 was "similar" to or "the same" as the one he had applied for in 2006, Triola does not even allege that the position was one with the Department of the Treasury. Triola also fails to allege any facts establishing that the Treasury Department was in any way involved with the decision to deny his job application in August 2009. Triola merely states that ASRC informed him via e-mail that the position he had applied for had been filled. As Geithner aptly put it in his motion: "Plaintiff does not allege that the Government had any influence over that decision, that the Government had reason to know that Plaintiff applied for the position, or even that the position was one within Treasury." (Def.'s Mem. of Law 12.)

Triola argues, however, that he should be given the opportunity to establish through discovery that ASRC and the Department of the Treasury were "joint employers." (Pl.'s Opp. 7-9.) For purposes of Title VII, "'[a] joint employer relationship may be found to exist where there is sufficient evidence that [one entity] had immediate control over the other company's

employees' and that the two companies shared responsibilities such as 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" *Jiggetts v. Local 32BJ, SEIU*, No. 10 Civ. 9082, 2011 WL 4056312, at *8 (E.D.N.Y. Aug. 10, 2011) (second alteration in original) (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005)).

In his complaint, Triola simply asserts, in a conclusory fashion, that the Department of the Treasury "had the requisite means and manner of control over the positions to which Plaintiff applied to qualify as a joint employer of Plaintiff." (Compl. ¶ 11.) This legal conclusion, however, is unsupported by any factual allegations that ASRC and the Department of the Treasury had a joint employer relationship in 2009. Indeed, in the August 12, 2010 order, I remarked that, "beyond conclusory allegations in the complaint, which may be disregarded on a motion to dismiss, Triola has not pled any plausible theory of retaliation relating to his 2009 employment application," and thus dismissed Triola's 2009 events-based claim against ASRC. (8/12/2010 Order at 7 n.2 (citation omitted).)

Moreover, even if Triola's 2009 events-based claim were treated as one brought under the ADEA (or were repled as such), it would nevertheless be subject to dismissal because an employer-employee relationship is also an essential element of an ADEA claim. *Kilkenny v. Greenberg Traurig, LLP*, No. 05 Civ. 6578, 2006 WL 1096830, at *4 (S.D.N.Y. Apr. 26, 2006). Thus, because Triola failed to establish that he and the Department of the Treasury had an employer-employee relationship in 2009, his Title VII claim against Geithner regarding 2009 events is subject to dismissal. *Cf. Orellana v. World Courier, Inc.*, No. 09-CV-576, 2010 WL 3861013, at *3 (E.D.N.Y. Sept. 28, 2010) (concluding that plaintiff could not state a Title VII claim against defendant because plaintiff had not pled facts sufficient to establish that defendant was plaintiff's employer).

## CONCLUSION

Geithner's motion to dismiss Triola's complaint is granted. The Clerk is directed to enter a final judgment in favor of both named defendants.

SO ORDERED.

Brooklyn, New York
December 12, 2011

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge